**Benson Scott WYLY, Appellant**

v.

**INTEGRITY INSURANCE SOLUTIONS, Appellee**

**NO. 14-15-00042-CV**

Court of Appeals of Texas, Houston (14th Dist.).

Opinion Filed October 18, 2016.

---

Jeffrey E. Farrell, Austin, TX, Bruce E. Ramage, Levon G. Hovnatanian, Kevin Graham Cain, Jamie R. Carsey, Houston, TX, for Appellee

Keith Alexander Gross, League City, TX, for Appellant

## OPINION

John Donovan, Justice

Appellant Benson Scott Wyly appeals an order granting summary judgment in favor of Integrity Insurance Solutions ("Integrity"). We reverse and remand.

### I. BACKGROUND

Appellant purchased a Glassair III aircraft in Bristol, Tennessee, that was to be transported to League City, Texas. Appellant contacted Garner Geisler, an insurance agent for Integrity, to obtain insurance for the plane in transit. Geisler contacted Heather Camp, a broker for U.S. Risk, Inc., and a policy was obtained from Essex Insurance Co. After the plane arrived in League City, appellant discovered the plane had been damaged in transit. Essex denied coverage and appellant sued Integrity, U.S. Risk and Essex. All three defendants filed motions for summary judgment. On October 13, 2014, the trial court granted summary judgment in favor of Integrity. On October 22, 2014, the trial court entered a final judgment dismissing all of appellant's claims against all three defendants. Appellant only appeals the trial court's judgment as to Integrity.

The record reflects appellant sued Integrity for negligent representation, breach of fiduciary duty, deceptive trade practices, violations of section 541.061 of the Texas Insurance Code, and the negligent training, hiring, and supervision of Integrity's agent, Geisler. On October 8, 2014, appellant filed a Notice of Partial Non-Suit of his causes of action against U.S. Risk, and his claims against Essex and Integrity for the negligent training, hiring, and supervision of Geisler. In its final judgment, the trial court granted appellant's Notice of Partial Non-Suit and Integrity's traditional and no-evidence motion for summary judgment. *See* Tex. R. Civ. P. 166a (b), (i). In his brief, appellant only contends the trial court erred in granting summary judgment in favor of Integrity on his claims under the DTPA and the Insurance Code.

### II. STANDARD OF REVIEW

We review de novo a trial court's decision to grant a summary judgment. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009). We consider the evidence in the light most favorable to the non-movant, indulging reasonable inferences and resolving doubts in the non-movant's favor. *Kane v. Cameron Int'l Corp.*, 331 S.W.3d 145, 147 (Tex. App.–Houston [14th Dist.] 2011, no pet.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005)). We credit evidence favorable to the non-movant if reasonable fact finders could and disregard contrary evidence unless reasonable fact finders could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). When, as here, the trial court grants the judgment without specifying the grounds, we will affirm if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

When a trial court grants a summary judgment on both no-evidence and traditional grounds, we first review the trial court's summary judgment under the no-evidence standard of Tex. R. Civ. P. 166a(i). *PAS, Inc. v. Engel*, 350 S.W.3d 602, 607 (Tex. App.–Houston [14th Dist.] 2011, no pet.). The movant for a no-evidence summary judgment must allege that there exists no evidence to support one or more essential elements of a claim for which the non-movant bears the burden of

proof at trial. Tex. R. Civ. P. 166a(i); *Kane*, 331 S.W.3d at 147. The non-movant must then present evidence raising a genuine issue of material fact on the challenged elements. *Kane*, 331 S.W.3d. at 147 (citing *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)). If the non-movant fails to produce more than a scintilla of evidence raising a genuine fact issue on the challenged elements of his claims, there is no need to analyze whether the movant's summary-judgment proof on the same claim satisfied the traditional summary-judgment burden of proof under Tex. R. Civ. P. 166a(c). A no-evidence summary judgment is essentially a pretrial directed verdict. *Mack Trucks*, 206 S.W.3d at 581.

The movant for a traditional summary judgment must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort*, 289 S.W.3d at 848. Summary judgment is properly awarded to a defendant if the defendant conclusively negates at least one essential element of the plaintiff's claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). If the defendant satisfies its burden, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact. *Kane*, 331 S.W.3d at 147 (citing *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995)).

### III. Summary Judgment Evidence

According to appellant, the fuselage was damaged during transit by a tie strap securing the plane to the trailer. Because the tail of the aircraft was not properly supported, it rocked up and down and collided against the tie straps.[1] Essex denied coverage on the basis the damage was caused by collision of the plane with the tie straps.

The insurance policy contains an express exclusion for the "[i]mproper packing, preparation for shipment or loading by you or the shipper."

Appellant only dealt with Geisler in procuring the insurance. Appellant averred he sought to obtain a comprehensive policy to protect "from all foreseeable loss to the aircraft, beginning when the aircraft was being loaded until the time the aircraft was unloaded off the truck." According to appellant, he described to Geisler the scope of insurance sought as "from A to Z," from loading to unloading, and provided examples as follows:

Is the plane covered

a. from A to Z. from loading to unloading;

b. if the plane fell off the trailer;

c. if the plane fell off forklift when loading or unloading;

d. if the plane fell off at my house;

e. is [sic] plane fell off crane;

f. if plane hit by debris;

g. it [sic] the ties broke:

h. if plane is hit against the vehicle: or

i. if another vehicle crashes into the vehicle and causes damage to my plane.

Geisler assured appellant he could procure the insurance requested.

Camp was contacted by Geisler to obtain a motor truck cargo policy for appellant. Camp stated "Essex chose the form." Camp had never seen a truck cargo or trip transit policy that provided coverage from "A to Z," i.e., with no conditions, limitations, or exclusions. Based on the information received from Geisler, Camp believed she provided the proper product as an option and it was appellant's decision whether to accept the policy.

---

1. There was no evidence to the contrary.

Geisler stated that after he gave appellant the quote, appellant "had all these scenarios" regarding what was covered by the policy. Geisler called Camp and asked her, "Well, when's it covered? What exactly—when is it covered, from where to where?" Camp replied, "from loading through unloading." Geisler then relayed to appellant, "This policy covers from loading through unloading" even though he never read the policy. Geisler did not advise appellant that he had not read the policy or that coverage was subject to its terms and conditions. Geisler did not tell appellant that appellant did not have to read the policy.

Although appellant swore that he did not receive "the actual policy" until after the plane was damaged, he admitted that he received "Exhibit 5a-g" before the incident occurred. The record reflects Exhibit 5g, attached to appellant's response to Integrity's motion for summary judgment, contains the exclusion for "[i]mproper packing, preparation for shipment or loading by you or the shipper" and has a fax date of July 18, 2012, six days before coverage began on July 24, 2012. After receipt of Exhibit 5g, appellant again asked Geisler if he was covered "from A to Z" and Geisler said, "[Y]es." Appellant said Geisler told him the insurance coverage was "from A to Z," "100 percent," and "full coverage." Appellant did not read the policy until after the plane was delivered.

According to Geisler, he relied upon Camp to provide the correct policy. When appellant reported the damages to the plane, Geisler believed it was covered because damage caused by the straps was consistent with the coverage appellant had requested. Geisler told appellant, "I got you the right coverage. You know, I asked for the right coverage. I reassured him that I did everything I was supposed to do." Geisler informed appellant, "if I screwed up, it's—it's the insurance agency's fault ... we have insurance to cover my screw-ups."

Appellant averred that he relied on Geisler's statements "because he was a professional in the insurance business, he was my long standing [sic] friend, and it appeared he had read the agreement." Appellant subsequently learned Geisler did not read the policy before making the representations to him regarding coverage. Appellant believed Geisler had read the agreement "because he affirmatively responded 'yes' to my examples of coverage." Appellant further averred:

Had Mr. Geisler represented that he did not read the policy, I would have waited to transport the plane until the scope of insurance was conclusively determined. Because Mr. Geisler represented the plane had the coverages I requested, I gave the ok to transport the plane. Mr. Geisler failed to state that the policy did not cover the plane's collision with the vehicle or roadway, improper packing, preparation for shipment or loading by you or your shipper, or any other exclusions. Mr. Geisler did not state that collision with the tie straps were excluded. Almost all the exclusions are contrary to the specific coverages I requested. Had Mr. Geisler disclosed that the plane did not have [sic] the above exclusions, I would have not shipped the plane until the plane was covered, or I would have sought another company that had assets to protect my loss, or I would not have bought the plane.

However, when appellant was asked, "Do you feel that Garner mislead [sic] you in any way?" he replied, "No."

### IV. No-Evidence Motion for Summary Judgment

■ By his third and fourth issues, appellant challenges the trial court's grant of

the no-evidence motion. Appellant's third issue asserts Integrity's no-evidence motion failed to specify elements of his causes of action to which there was no evidence.[2] Issue four of appellant's brief contends the trial court erred in granting the no-evidence motion based on new grounds raised in Integrity's reply. In its brief, Integrity does not dispute either claim.

A no-evidence motion for summary judgment "must state the elements as to which there is no evidence." Tex. R. Civ. P. 166a(i). A motion filed pursuant to 166a(i) "must be specific in challenging the evidentiary support for an element of a claim" and "conclusory motions or general no-evidence challenges to an opponent's case" are insufficient. Tex. R. Civ. P. 166a(i) cmt. Although the motion in this case purports to be both a traditional and no-evidence motion, no effort was made to designate those claims which are submitted under (c) and those which are submitted under (i). See Tex. R. Civ. P. 166a(c), (i). As to appellant's claims under the DTPA and the Insurance Code, the motion does not single out the elements as to which there is no evidence. See Tex. R. Civ. P. 166a(i). Therefore, the motion does not meet the requirements of the rule and granting it under the no-evidence standard on appellant's DTPA and Insurance Code claims was improper. See Cuyler v. Minns, 60 S.W.3d 209, 212–13 (Tex. App.–Houston [14th Dist.] 2001, pet. denied).

■ The record reflects that on the date set for submission of Integrity's motion, it filed a reply asserting for the first time there was no evidence appellant relied on Geisler's representations to his detriment and that there was no evidence of a policy that would have afforded the coverage appellant sought. Although entitled to file its reply as late as the date set for the summary judgment hearing, the movant is not entitled to use its reply to amend its motion for summary judgment or to raise new and independent summary judgment grounds. Guest v. Cochran, 993 S.W.2d 397, 403 (Tex. App.–Houston [14th Dist.] 1999, no pet.). Because these grounds were not raised in the motion for summary judgment, Integrity could not raise them for the first time in its reply. See Reliance Ins. Co. v. Hibdon, 333 S.W.3d 364, 378 (Tex. App.–Houston [14th Dist.] 2011, pet. denied).

Accordingly, we sustain appellant's third and fourth issues. For these reasons, we will consider only those arguments advanced pursuant to Rule 166a(c).

## V. TRADITIONAL MOTION FOR SUMMARY JUDGMENT

In his first two issues, appellant challenges the trial court's grant of the traditional motion. Issue one argues Integrity's acts and omissions are actionable under the DTPA and section 541.061 of the Insurance Code. Appellant's second issue asserts common law defenses are not applicable to claims under the DTPA or the Insurance Code. We address each in turn.

A. *Was there an actionable misrepresentation?*

■ Appellant contends Geisler's representation that the policy met his expectations, without informing appellant that he had not read the policy, was a misrepresentation of insurance coverage. See Tex. Bus. & Com. Code Ann. §§ 17.46(b)(5), (12), (24), 15.50(a)(3) (West 2011); Tex. Ins. Code Ann. § 541.061(a)(1), (2), (3) (West 2009). Integrity does not dispute that an affirmative misrepresentation of insurance coverage may give rise to claims under the DTPA or the Texas Insurance Code. See Brown & Brown of Texas, Inc. v. Omni

---

**2.** Alternatively, appellant claims his affidavit provided some evidence of each element.

*Metals, Inc.*, 317 S.W.3d 361, 383 (Tex. App.–Houston [1st Dist.] 2010, pet. denied). Rather, Integrity contends that Geisler's assurances to appellant did not constitute such a misrepresentation.

In its motion for summary judgment, Integrity argued that absent an affirmative misrepresentation, appellant's mistaken belief about the scope of coverage is not actionable under the DTPA or the Texas Insurance Code. We agree. *See Moore v. Whitney–Vaky*, 966 S.W.2d 690, 692 (Tex. App.–San Antonio 1998, no pet.)("In the absence of some affirmative misrepresentation, a mistaken belief about the scope of coverage is not actionable.") (quoting *Sledge v. Mullin*, 927 S.W.2d 89, 94 (Tex. App.–Fort Worth 1996, no writ)).

Integrity further contended that appellant's mistaken belief that it is obtaining coverage under certain contingencies, which are not in fact covered by the policy, cannot establish liability. We agree that "[g]eneral claims by the insurer of the adequacy or sufficiency of coverage, for instance, are not generally actionable under the DTPA." *State Farm Cnty. Mut. Ins. Co. v. Moran*, 809 S.W.2d 613, 621 (Tex. App.–Corpus Christi 1991, writ denied) (citing *Employers Cas. Co. v. Fambro*, 694 S.W.2d 449, 451–52 (Tex. App.–Eastland 1985, writ ref'd n.r.e.) (determining where insured did not show insurer made representations contrary to the exclusion from coverage of loss shown on the policies issued and delivered to the insured there was no evidence of a misrepresentation)). "Absent some specific misrepresentation of its terms of coverage by the insurer [that] the insured's mistaken belief that he is obtaining coverage under certain contingencies which are not in fact covered under an insurance policy [are] not generally grounds for a DTPA claim against the insurer." *Id.* at 620–21. In *Moran*, the court determined State Farm's representa-

tion the insured had "full coverage" when he did not was not a specific misrepresentation of the terms of coverage. *Id.* at 620. Likewise, in *Manion v. Sec. Nat'l Ins. Co.*, No. 13–01–00248–CV, 2002 WL 34230861, *2 (Tex. App.–Corpus Christi–Edinburg 2002, no pet.) (not designated for publication), the court found there was no affirmative misrepresentation about flood coverage where, the insurance agent referred to the standard homeowner's policy as "full coverage," without more. In *Oldaker v. Travelers Ins. Co.*, 497 S.W.2d 402 (Tex. Civ. App.–El Paso 1973, no writ), the insured testified that he had requested "full coverage." He also testified that he signed the rejection slip for the uninsured motorist coverage and that he knew what he was signing. 497 S.W.2d at 403.

In this case, Geisler did more than represent the policy provided "full coverage" and there is no evidence that appellant was aware of the exclusion. Appellant's uncontested affidavit avers that he did not read the policy before accepting it because he relied upon Geisler's assurances the policy provided coverage from "*loading* to unloading," as well as all of the scenarios appellant posited. (Emphasis added.) Also uncontested is the evidence reflecting the policy contained an express exclusion of coverage for improper *loading.* Geisler's assurances to appellant's questions amounted to more than "vague representations." *See Bank One, Tex., N.A. v. Little*, 978 S.W.2d 272, 280 (Tex. App.–Fort Worth 1998, pet. denied) (holding imprecise or vague representation constitutes mere opinion and is not actionable misrepresentation under DTPA); *Hedley Feedlot, Inc., v. Weatherly Trust*, 855 S.W.2d 826, 839 (Tex. App.–Amarillo 1993, writ denied) (holding imprecise statement not actionable misrepresentation under DTPA). Considering the evidence presented, we hold a genuine fact issue exists as to whether

Geisler misrepresented the coverage afforded by the policy. *See Omni Metals,* 2002 WL 1331720, *5; *Garrison Contractors,* 927 S.W.2d at 300; *Rice,* 324 S.W.3d at 674–75.

Accordingly, we hold that, indulging all inferences in appellant's favor, the trial court erred in granting summary judgment on the basis there was no affirmative misrepresentation of insurance coverage. *See generally First Title Co. of Waco v. Garrett,* 860 S.W.2d 74, 76 (Tex. 1993) ("Under Texas law, when a seller makes an affirmative representation, the law imposes a duty to know whether that statement is true.") Appellant's first issue is sustained.

*B. Does appellant's failure to read the policy preclude his claims?*

 Integrity denies raising a common-law defense and states "it asserted [appellant's] failure to read the policy negated the misrepresentation element of his claims as a matter of law." Integrity's motion for summary judgment maintained "under Texas law, [appellant] is charged with the duty to read the policy and with the knowledge of its terms (whether he has read them or not)." Integrity contends the rule that an insured is charged with knowledge of the contents of his policy (the "deemed to know" rule) is not an affirmative defense.

We see no distinction between "failure to read" and "deemed to know." Integrity's motion for summary judgment asserted to the trial court that appellant was charged with the duty to read the policy. Integrity further asserted appellant was charged with knowledge of the policy's terms. Such knowledge could only have been gained by

reading the policy. Regardless of Integrity's characterization, the trial court was asked to grant summary judgment for the reason that appellant failed to read the policy, thereby failing to discover the exclusion which was contrary to Geisler's representations of coverage. Thus we address appellant's argument that "failure to read" is a common-law defense that cannot be raised to defeat a claim under the DTPA or the Insurance Code.

In *Smith v. Baldwin,* 611 S.W.2d 611, 616 (Tex. 1980), the Texas Supreme Court stated, "The DTPA does not represent a codification of the common law. A primary purpose of the enactment of the DTPA was to provide consumers a cause of action for deceptive trade practices without the burden of proof and numerous defenses encountered in a common law fraud or breach of warranty suit."[3] A number of cases have applied *Baldwin* to disallow the use of common law defenses in DTPA claims. *See Alvarado v. Bolton,* 749 S.W.2d 47, 48 (Tex. 1988) (barring use of doctrine of merger); *Weitzel v. Barnes,* 691 S.W.2d 598, 600 (Tex. 1985) (barring use of parole evidence rule and common law burden of proof); *O'Hern v. Hogard,* 841 S.W.2d 135, 137 (Tex. App.–Houston [14th Dist.] 1992, no writ) (barring common law doctrine of new and independent cause). However, other cases recognize some common law doctrines apply to the DTPA. *See Cruz v. Andrews Restoration, Inc.,* 364 S.W.3d 817, 826 (Tex. 2012) (holding section 17.50(b)(3) of the DTPA contemplates the common law requirement of restoration); *Morton v. Nguyen,* 412 S.W.3d 506, 511 (Tex. 2013) (holding the statutory right to rescind contract for deed incorporated the common law requirement of mutual resti-

---

**3.** In *Baldwin,* the court rejected imposing a requirement of proof of intent for a claim brought under the DTPA for misrepresentation where the DTPA had no such require-

ment. *Id.* at 617. *See also Diversified, Inc. v. Gibraltar Sav. Ass'n,* 762 S.W.2d 620, 623 (Tex. App.–Houston [14th Dist.] 1988, writ denied) (same).

tution)[4]; *Joseph E. Seagram & Sons, Inc. v. McGuire*, 814 S.W.2d 385, 387–88 (Tex. 1991) (holding that, under the DTPA, no legal duty exists to warn of the health risks of alcohol consumption because such risks are "within the ordinary knowledge common to the community"); *Autohaus, Inc. v. Aguilar*, 794 S.W.2d 459, 462 (Tex. App.–Dallas 1990), *writ denied*, 800 S.W.2d 853 (Tex. 1991) (permitting use of common law doctrine of "puffing" in DTPA claim); *Jenkins v. Steakley Bros. Chevrolet Co.*, 712 S.W.2d 587, 590 (Tex. App.–Waco 1986, no writ) (permitting DTPA suit to be barred by accord and satisfaction).

Appellant refers this court to *Frank B. Hall & Co. v. Beach, Inc.*, 733 S.W.2d 251 (Tex. App.–Corpus Christi 1987, writ ref'd n.r.e.), to support his position that *Baldwin* should be applied to the "failure to read" defense.[5] In *Hall*, the insured sued the broker, Frank B. Hall & Co., and the carrier for failure to pay a claim, violations of the DTPA and negligence. *Hall*, 733 S.W.2d at 254. Hall affirmatively pled failure to read the policies as a defense and the insured's president admitted that he did not read the policies. *Id.* at 264. Hall contended the trial court erred in failing to submit its requested issue to the jury regarding negligence in failing to read the insurance policies. *Id.* The court agreed that Hall's issues on failure to read the policies should have been submitted as to the negligence issue but not the Insurance Code claims. *Id.* The court stated contributory negligence was a common-law defense and thus could not be used to defeat recov-

ery under the DTPA. *Id.* The court determined this rule was equally applicable to Insurance Code claims and held "any contributory negligence attributable to [the insured] could not defeat recovery on its Insurance Code claims." *Id.*

However, in *Celestino v. Mid–Am. Indem. Ins. Co.*, 883 S.W.2d 310, 316 (Tex. App.–Corpus Christi 1994, writ denied), the Corpus Christi court affirmed the trial court's summary judgment of claims for alleged violations under both the DTPA and the Insurance Code, stating:

> None of these claims endured [the insured's agent] failure to read the relevant exclusions in the policy of insurance he purchased. *But see Frank B. Hall & Co. v. Beach, Inc.*, 733 S.W.2d 251, 264 (Tex. App.–Corpus Christi 1987, writ ref'd n.r.e.) (in factually similar case holding insurance agent liable, no common-law defense of contributory negligence in failure to read policy under Insurance Code or DTPA).

Thus the court declined to hold, as it had in *Hall*, that "failure to read" could not be raised. However, it did so only after determining "Mid-America neither misrepresented the coverage nor owed [the insured] a duty to disclose the exclusion of exemplary damages more expressly than it did in the plain wording of the policy." *Id.*

We see a distinction between *Hall* and *Celestino*. In *Celestino*, the court declined to impose a duty to explain policy provisions and there was no misrepresentation, thus there was no claim under the DTPA.

---

4. A violation of certain contract for deed provisions also is actionable under the DTPA.

5. Appellant further notes this court cited *Hall* in *Morton v. Hung Nguyen*, 369 S.W.3d 659, 673 (Tex. App.–Houston [14th Dist.] 2012), *rev'd in part sub nom.* 412 S.W.3d 506 (Tex. 2013), when we stated, "Common-law defenses may not be used to defeat claims brought under a statute that was not designed to be a

codification of the common law." As noted above, in its opinion the Texas Supreme Court held the statutory remedy incorporated the common law element of mutual restitution. *Morton v. Nguyen*, 412 S.W.3d at 511. Our opinion did not determine that issue, but held it had been waived. *Morton v. Hung Nguyen*, 369 S.W.3d 673 n.9.

The failure to read the policy did not therefore operate to foreclose a DTPA claim.

█ Based upon the authorities discussed above, we decline to hold the defense of "failure to read" is applicable to alleged violations under the DTPA or the Insurance Code for an affirmative misrepresentation of coverage. We now turn to Integrity's argument that "a legion of opinions [have] applied the ["deemed to know"] rule to preclude misrepresentation claims under both the DTPA and Insurance Code."

Integrity relies upon *Shindler v. Mid–Continent Life Ins. Co.*, 768 S.W.2d 331, 334 (Tex. App.–Houston [14th Dist.] 1989, no writ), and cases citing it, to support its position that an insured is deemed to know the contents of the contract he makes and is charged as a matter of law with that knowledge. *Id. Shindler* involved a claim of misrepresentation under the Insurance Code [6] and we held "[a] claim for misrepresentation can not [sic] stand when the party asserting the claim is legally charged with knowledge of the true facts." *Id.* But *Shindler* is clearly distinguishable from the case at bar.

In *Shindler*, the policies at issue terminated by their own terms on June 27, 1981. *Id.* In March 1983, the insurance agent provided an analysis of coverage which included those policies. *Id.* We noted the necessity of paying premiums to avoid termination was stated in the policies and an insured is deemed to know the contents of the contract he makes. *Id.* We held the insured was charged as a matter of law with knowledge that premiums were to be paid to prevent the policies from expiring under their own terms. *Id.* We further held the insured could not assert a claim for misrepresentation based on conduct that occurred *after* the policies had terminated due to non-payment. *Id.* at 335 (emphasis added). Thus in *Shindler* the alleged affirmative misrepresentation occurred after the policies expired, not before they were accepted by the insured.

Integrity's reliance upon *Pankow v. Colonial Life Ins. Co. of Tex.*, 932 S.W.2d 271, 277 (Tex. App.–Amarillo 1996, writ denied), is similarly misplaced. In considering the Pankows' common-law claim for misrepresentation, the court wrote, "knowledge of the true facts, as expressed in the contract, precluded [the Pankows] from relying upon [Guiberteau's] misstatement." The misrepresentations at issue concerned Guiberteau's authority to reinstate the policy and the fact of reinstatement of the policy. *Id.* The Pankows were charged, as a matter of law, with knowledge that the policy restricted the means by which it could be reinstated and who possessed the power to modify that procedure. *Id.* The Pankows' claims for violations of the Insurance Code and the DTPA were not based upon Guiberteau's misstatement. *Id.* at 278. Further, the court noted that "[t]o the extent that the trial court held the Pankows contributorily negligent, as a matter of law, that 'affirmative defense' applies to the cause of negligence.... Suffice it to say, any contributory negligence on their part would not necessarily preclude recovery based on fraud of deceptive trade practices." *Id.* at 279. Thus *Pankow* did not preclude recovery for violations of the DTPA and the Insurance Code based upon an affirmative misrepresentation under the "deemed to know" rule.

*Manion*, 2002 WL 34230861, at *1, involved claims for violations of the DTPA and the Insurance Code. The issues were

---

6. Specifically, article 21.21 which was repealed by Act of June 21, 2003, 78th Leg. R.S., ch. 1274, § 26(a)(1), Tex. Gen. Laws 4138.

whether there had been a misrepresentation and, if so, whether it violated the DTPA and the Insurance Code. The court found there was no affirmative misrepresentation and noted "[t]he general rule is that *in the absence of an affirmative misrepresentation,* a mistaken belief about the scope of coverage is not actionable under DTPA or the Insurance Code." *Id.* at *2 (emphasis added). Unlike the facts alleged in this case, "Manion only made assumptions about coverage for flood damage. Manion and Arnold never discussed flood coverage. Nor was there an allegation that Arnold claimed there were no exclusions in the policy or that he misrepresented what 'full coverage' meant." *Id.*

The court went on to state, "Manion's claim also fails because she was deemed to know the contents of the policy, which specifically excluded flood coverage.... An insured has a duty to read the policy and, failing to do so, is charged with knowledge of the policy terms and conditions." *Id.* at *3. The *Manion* court's application of the "deemed to know" rule in the absence of an affirmative misrepresentation is not inconsistent with our determination above that "failure to read" is not a defense to a claim for an affirmative misrepresentation that violates the DTPA or the Insurance Code.

Also cited by Integrity are *Jeffries v. Pat A. Madison, Inc.,* 269 S.W.3d 689 (Tex. App.–Eastland 2008, no pet.), and *Ruiz v. Government Emps. Ins. Co.,* 4 S.W.3d 838, 841–42 (Tex. App.–El Paso 1999, no pet.). Both cases involved common-law claims and are therefore inapposite to the case at bar.

Integrity refers to *Brown & Brown of Tex.,* 317 S.W.3d at 393, as well. This appeal from a jury trial followed our reversal of a summary judgment in *Omni Metals, Inc. v. Poe & Brown of Texas, Inc.,* No. 14–00–01081–CV, 2002 WL 1331720 (Tex. App.–Houston [14th Dist.] June 13, 2002, pet. denied) (not designated for publication). In that case, Omni was storing steel at Port Metal's facility. Following a loss due to fire at the facility, the insurer denied coverage based upon an exclusion in Port Metal's policy for property stored for a fee. *Id.* at *1. The insurance agent knew that Omni wanted to make certain its property was covered by Port Metal's insurance but rather than disclosing or providing additional information to Omni about the exclusion, a certificate was issued stating "coverage includes property of others in custody of insured." *Id.* at *4. Considering all the circumstances, we held a fact issue existed "as to whether [Poe & Brown] misrepresented the coverage afforded by the policy." *Id.* at *5. Omni, who was not a party to the insurance contract, was not legally charged with knowledge of the storage fee exclusion. *Id.* at *8.

Subsequently, the *Brown* court rejected a request to extend due diligence obligations to parties such as Omni. *Brown & Brown of Tex.,* 317 S.W.3d at 393. In doing so, the court stated, "a party claiming to be an additional insured is held to the same burden as the named insured of reading the policy to ascertain its right to coverage." *Id. Brown* does not support Integrity's position that the "deemed to know" rule applies to the case at bar.

More akin to the instant case are *Garrison Contractors, Inc. v. Liberty Mut. Ins. Co.,* 927 S.W.2d 296, 300 (Tex. App.–El Paso 1996), *aff'd,* 966 S.W.2d 482 (Tex. 1998), and *Rice v. Metro. Life Ins. Co.,* 324 S.W.3d 660, 674–75 (Tex. App.–Fort Worth 2010, no pet.). In *Garrison Contractors* it was argued all of the insured's alleged misrepresentations constituting its DTPA and Insurance Code claims were barred because the terms of the policy contradicted each alleged misrepresentation. 927 S.W.2d at 299. The court noted that four of

the alleged misrepresentations were based upon failures to disclose information that was readily attainable from reading the policy. *Id.* One of the alleged misrepresentations, however, concerned "*an affirmative misrepresentation* about the meaning of one of the terms of the Policy as distinguished from a simple failure to disclose information readily obtainable from the Policy itself." *Id.* at 300 (emphasis added). The court found that allegation raised a fact issue "sufficient to defeat the summary judgment against [the insured] on its DTPA and Insurance Code counterclaims." *Id.* In *Rice,* having already recognized the policy informed Glenda Rice that Larry Rice's coverage ended upon her retirement, the court agreed there was a fact issue about whether MetLife misrepresented the terms of Glenda's original insurance policy. 324 S.W.3d at 676. That fact issue precluded summary judgment on the DTPA and Insurance Code claims. *Id.* at 676–78.

In this case, appellant's uncontested affidavit avers that he relied upon Geisler to provide the coverage he requested and believed, from Geisler's answers to his questions about coverage, that Geisler had read the policy. As the evidence set forth above demonstrates, even though he never read the policy, Geisler also believed that he had given appellant a policy with the requested amount of coverage. Appellant's failure to read the policy does not preclude his claims under the DTPA or the Insurance Code. Because appellant's claims are for alleged violations under the DTPA and the Insurance Code based upon an affirmative misrepresentation of coverage, the trial court could not have properly granted summary judgment on the basis that appellant was deemed to know the contents of the policy. Appellant's second issue is sustained.

## VI. Conclusion

Accordingly, we reverse the trial court's judgment in favor of Integrity and remand for further proceedings.