**Affirmed and Opinion Filed January 5, 2023**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-21-00448-CV

### ORANGE CUP DRIVE IN LLC, Appellant
### V.
### MID-CONTINENT CASUALTY COMPANY, Appellee

**On Appeal from the 86th Judicial District Court**
**Kaufman County, Texas**
**Trial Court Cause No. 95975-86**

## MEMORANDUM OPINION

Before Justices Nowell, Smith, and Rosenberg
Opinion by Justice Rosenberg[1]

The trial court granted summary judgment for appellee Mid-Continent

Casualty Company (MCC) on appellant Orange Cup Drive In LLC's claims for

violations of the Insurance Code and the Prompt Payment Act, deceptive trade

practices, bad faith, and fraud. In this second appeal arising from a dispute about

insurance coverage for environmental cleanup costs, Orange Cup contends the trial

court erred by granting summary judgment because it raised genuine issues of

---

[1] The Hon. Barbara Rosenberg, Justice, Assigned. This case was submitted without oral argument. At the time of submission, Justice Leslie Osborne was a member of the panel. Justice Rosenberg succeeded Justice Osborne as a member of the panel after Justice Osborne's resignation from the Court. *See* TEX. R. APP. P. 41.1.

material fact on its extracontractual claims. Concluding that MCC established its right to judgment as a matter of law, we affirm.

## BACKGROUND

This is a dispute about insurance coverage for losses Orange Cup sustained when it attempted to open an inactive gas station at its convenience store in Mabank. Most of the facts relevant to this appeal were set forth in our opinion in Orange Cup's initial appeal, and we do not repeat them here. *See Orange Cup Drive In LLC v. Mid-Continent Cas. Co.*, No. 05-19-00014-CV, 2020 WL 5087763, at \*1–3 (Tex. App.— Dallas Aug. 28, 2020, no pet.) (mem. op.) (*Orange Cup I*). At issue is Orange Cup's coverage under a 2014–15 pollution liability and environmental damage insurance policy issued by MCC. *See id.* at \*1. MCC paid some of the losses Orange Cup claimed under the policy but not others. *Id.*

In *Orange Cup I*, we affirmed the trial court's summary judgment on Orange Cup's breach of contract claim, concluding that Orange Cup failed to raise a genuine issue of material fact in response to MCC's motion addressing that claim. *Id.* at \*4– 7. We reversed the trial court's judgment, however, as to Orange Cup's extracontractual claims that were not addressed in MCC's motions for summary judgment and remanded the case for further proceedings. *Id.* at \*9.

On remand, MCC again moved for summary judgment. It sought judgment "on all remaining claims" Orange Cup had pleaded, including claims for violations of the Texas Insurance Code, the Deceptive Trade Practices Act, and the Prompt

Payment Act, and for common law bad faith and fraud. MCC did not address the individual elements of each of these claims. Instead, MCC argued that a key element of each of Orange Cup's extracontractual claims was negated by our holdings that MCC did not breach the policy and Orange Cup was not entitled to recover further policy benefits. *See Orange Cup I*, 2020 WL 5087763, at *5–8.

Orange Cup responded and filed three affidavits of its principal Shanta Barua.[2] Orange Cup argued that even though it was unsuccessful on its claim for breach of contract, its extracontractual and statutory claims were independent, and viable. Although Orange Cup repeated coverage arguments rejected in the first appeal, it also asserted: (1) MCC "took advantage of [Orange Cup's] lack of expertise and knowledge to misrepresent to [Orange Cup] that it has coverage for liability from a third party claim," (2) Orange Cup "had the belief that it has the coverage for total removal of environmental pollution," and (3) MCC wrongly refused to approve any expenses above the policy's deductible for cleanup at the site despite Orange Cup's cooperation and compliance with a Rule 11 agreement to proceed with the cleanup. Shanta's affidavits repeated these assertions but did not provide any further detail about MCC's alleged misrepresentations.

---

[2] As we explained in *Orange Cup I*, Shanta Barua is Orange Cup's owner, director, and managing member. *Orange Cup I*, 2020 WL 5087763, at *1. Pulak Barua is Orange Cup's registered agent and the lessor of the property in Mabank, Texas where Orange Cup operates a convenience store. *Id.* For clarity, we refer to Shanta Barua and Pulak Barua by their first names.

MCC filed a reply and objections to Shanta's affidavits. The trial court sustained the objections and granted MCC's motion for summary judgment. This appeal followed.

### ISSUES AND STANDARDS OF REVIEW

Orange Cup asserts four issues on appeal, arguing that: (1) Orange Cup's extracontractual claims are viable despite the trial court's ruling, affirmed in the previous appeal, that MCC did not breach the insurance policy; (2) the trial court erred by disregarding Orange Cup's summary judgment affidavits; (3) the trial court erred by considering summary judgment grounds that MCC did not raise until its summary judgment reply; and (4) the trial court erred by dismissing Orange Cup's extracontractual claims.

We review a trial court's summary judgment ruling de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

A party without the burden of proof who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.

*Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* TEX. R. CIV. P. 166a(b), (c). Once the movant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the claimant to come forward with competent controverting evidence that raises a fact issue. *Phan Son Van v. Pena*, 990 S.W.2d 751, 753 (Tex. 1999).

The trial court granted MCC's motion for summary judgment "in its entirety" without specifying the grounds. Consequently, the trial court's ruling will be upheld if any of the grounds in the summary judgment motion can be sustained. *Bradley v. State ex rel. White*, 990 S.W.2d 245, 247 (Tex. 1999); *Janai v Sanford Rose Assocs., Int'l, Inc.*, No. 05-18-01079-CV, 2020 WL 728428, at *4 (Tex. App.—Dallas Feb. 13, 2020, pet.denied) (mem. op.).

There is no difference between the standards for evidence admissible in a summary judgment proceeding and those applicable to a regular trial. *Seim v. Allstate Texas Lloyds*, 551 S.W.3d 161, 163 (Tex. 2018) (per curiam). "Evidentiary rulings are committed to the trial court's sound discretion." *U-Haul Int'l Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012). A trial court abuses its discretion when it acts without regard for guiding rules or principles. *Id.*

## DISCUSSION

We first consider Orange Cup's complaints that the trial court erred by disregarding Shanta's summary judgment affidavits and by considering grounds MCC did not raise until its reply. We will then turn to the merits of MCC's motion.

–5–

## 1. Summary judgment affidavit testimony

In its second issue, Orange Cup contends the trial court erred by disregarding its affidavits when ruling on MCC's summary judgment motion. Shanta signed three affidavits in support of Orange Cup's summary judgment response. The first, dated March 3, 2021, included testimony about coverage matters that were addressed in *Orange Cup I*, and MCC objected to it on that basis, among other grounds. The March 3 affidavit also included testimony regarding Orange Cup's extracontractual claims. Shanta testified:

> At the time of the purchase of the policy I was told that Coverage A will cover third party claims against the plaintiff. I was under the impression that if a claim is made against plaintiff by a third party that the policy would cover it including claims made by the landlord against plaintiff arising from the use and occupation of the property of the landlord.
>
> Defendant took advantage of my lack of expertise and knowledge of the intricacies involved in such to deceive me into believing that I obtained third party liability coverage for plaintiff.

She also testified that "Defendant has not shown the willingness or good faith to settle this claim with plaintiff."

Shanta signed two additional affidavits on March 5, 2021. In these affidavits, Shanta verified that "the statements in support of Plaintiff's Response to Defendant's Motion for Summary Judgment are true and correct," and that all documents attached in the appendix to Orange Cup's summary judgment response "are true and correct copies of the original documents."

MCC objected to Shanta's affidavits on several grounds, arguing that:

- The March 3 affidavit addressed coverage matters that were decided in *Orange Cup I*, are law of the case, and cannot be relitigated;

- The March 3 affidavit contained statements of an interested witness's subjective beliefs, including that Orange Cup was "willing and able to provide the deductible" and that MCC "has not shown willingness or good faith to settle this claim," which are insufficient to raise a fact issue to preclude summary judgment;

- The March 3 affidavit contained legal conclusions, including that Orange Cup was liable to the landlord for environmental damages and that Orange Cup "is entitled to be indemnified" under the policy; and

- The March 5 affidavit purporting to verify statements in Orange Cup's summary judgment response as "true and correct" was not competent summary judgment proof, so the factual matters addressed in the response, including that Orange Cup complied with a rule 11 agreement to pay the deductible and that MCC's refusal to pay under the policy led to the total closure of Orange Cup's gas business, were not supported by competent summary judgment proof.

Orange Cup responded that Shanta was personally deceived by MCC's misrepresentations. She conducted all negotiations with MCC, "so her beliefs as to the state of affairs [were] important" in understanding Orange Cup's claims. Orange Cup also argued there was evidence that MCC refused to approve the contractor's bill and made misrepresentations about the existence of third party liability coverage.

Summary judgment affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." TEX. R. CIV. P. 166a(f); *Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008) (per curiam). "Conclusions in an affidavit are insufficient either to support summary judgment or

to raise a fact issue in response to a summary-judgment motion." *Holloway v. Dekkers*, 380 S.W.3d 315, 323 (Tex. App.—Dallas 2012, no pet.). "A conclusory statement is one that does not provide the underlying facts to support the statement." *Id.*

In support of its second issue, Orange Cup argues: (1) Shanta's affidavit testimony about coverage is relevant to the extracontractual claims, (2) the same evidence needed to prove breach of contract may also be used to prove extracontractual claims, (3) although Shanta is an interested witness, "her beliefs as to the state of affairs are important in understanding the misrepresentation done to her that misled her to enter into the insurance contract with the MCC," (4) other jurisdictions permit affiants to verify summary judgment responses as true and correct,[3] and (5) it is for a jury to decide whether MCC misrepresented the existence of third party liability coverage and wrongfully refused to pay the contractor's bill.

We agree that testimony addressing MCC's misrepresentations about coverage and refusals to pay benefits due under the policy could be relevant to Orange Cup's extracontractual claims. *See Orange Cup I*, 2020 WL 5087763, at *8 (noting that an insured's claim for breach of an insurance contract is distinct and independent from claims that insurer violated extracontractual common law and

---

[3] As this Court has held that a verified responsive pleading is not competent summary judgment evidence, *Olsen v. Commission for Lawyer Discipline*, 347 S.W.3d 876, 886 (Tex. App.—Dallas 2011, pet. denied), we may not conclude otherwise here. *See Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022) ("three-judge panels must follow materially indistinguishable decisions of earlier panels of the same court unless a higher authority has superseded that prior decision").

–8–

statutory duties). Here, however, Shanta's testimony of her understanding that "Coverage A will cover third party claims against [Orange Cup]" and her allegation that MCC "deceive[d] me into believing that I obtained third party liability coverage for [Orange Cup]" are conclusions unsupported by any factual detail. *See All Am. Tel., Inc. v. USLD Commc'ns, Inc.*, 291 S.W.3d 518, 527–31 (Tex. App.—Fort Worth 2009, pet. denied) (trial court did not abuse its discretion by excluding affidavit that failed to provide "detail and specificity" about alleged misrepresentations).

Shanta does not explain how she came to her understanding about the scope of Coverage A. As we explained in *Orange Cup I*, Shanta owns Orange Cup, a limited liability company. *Orange Cup I*, 2020 WL 5087763, at *1. She is also its director and managing member. *Id.* Pulak Barua is Orange Cup's registered agent and the lessor under the three-year commercial lease for the time period at issue. *Id.* Shanta is the lessee under the lease, and Orange Cup is the named insured under the policy. *Id.* Shanta testified she was "under the impression" that claims by "the landlord"—that is, Pulak—"against plaintiff," that is, Orange Cup—would be covered under the policy. And she stated her "impression" that coverage would include "claims made by [Pulak] against [Orange Cup] arising from the use and occupation of [Pulak's] property," and "[Orange Cup] was liable to [Pulak] for the environmental damages" caused by leakages from the storage tanks on the property.

Consistent with Shanta's understanding that "Coverage A will cover third party claims against [Orange Cup]," the policy does provide coverage for certain third party claims, as we explained in *Orange Cup I. Id.* at \*5–6. But after we concluded that Coverage A did not extend to the specific losses Orange Cup had claimed here, Orange Cup did not offer summary judgment evidence to explain how Shanta was misled into believing that it did. *See Holloway*, 380 S.W.3d at 323 (conclusory statements without underlying facts are insufficient to raise a fact issue in response to summary judgment motion).

We conclude the trial court did not err by sustaining MCC's objections to Shanta's affidavits. *See id.* (trial court did not err by sustaining objection to conclusory statements in affidavit); *Olsen*, 347 S.W.3d at 886 (verified responsive pleading is not competent summary judgment evidence). Accordingly, we decide Orange Cup's second issue against it.

## 2. Grounds in summary judgment reply

In its third issue, Orange Cup contends the trial court erred by permitting MCC to allege new grounds for summary judgment in its reply to Orange Cup's response. *See Wyly v. Integrity Ins. Sols.*, 502 S.W.3d 901, 907 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (summary judgment movant could not raise new no-evidence grounds in reply to nonmovant's response). Orange Cup argues MCC sought a traditional summary judgment on a single ground: that because MCC did not breach the insurance contract, "Orange Cup has no viable extracontractual claims." Citing

–10–

*Wyly*, Orange Cup contends that MCC alleged a new "no-evidence" ground in its summary judgment reply. We disagree.

MCC sought summary judgment under civil procedure rule 166a(c), stating as its grounds:

> The Court should grant summary judgment to MCC on all remaining claims by Orange Cup (*i.e.,* its extracontractual claims for alleged Insurance Code violations, DTPA violations, common-law bad faith, Prompt Payment Act claims, and fraud). The Court of Appeals' holdings—that MCC did not breach the policy and that Orange Cup is not entitled to recover any further policy benefits—negate a key element of each of Orange Cup's extracontractual claims, based on the holdings of *USAA Tex. Lloyds Co. v. Menchaca,* 545 S.W.3d 479 (Tex. 2018), and its progeny.
>
> Specifically, because Orange Cup has no right to recover any further policy benefits, no injury independent of the claim for policy benefits, and no determination that MCC wrongfully rejected its claims, Orange Cup is not entitled to recover for alleged Insurance Code violations, DTPA violations, common-law bad faith, Prompt Payment Act claims, or fraud based on allegedly misrepresenting policy coverage. By negating at least one element of each claim, MCC is entitled to summary judgment on these claims, as a matter of law.

MCC then went on to identify and attach exhibits—primarily its correspondence with Orange Cup—in support of its contention that Orange Cup had "no right to recover any further policy benefits," no independent injury, and "no determination that MCC wrongfully rejected its claims."

In its summary judgment reply, MCC did argue that after it submitted evidence establishing its right to judgment, the burden shifted to Orange Cup to raise a fact issue "on each element of each claim" to preclude summary judgment on the extracontractual claims. MCC argued that Orange Cup failed to meet this burden.

–11–

MCC contended that Orange Cup's summary judgment evidence addressed only the contractual coverage issues already resolved by this Court, not Orange Cup's extracontractual claims. MCC concluded that Orange Cup's evidence was insufficient to raise a fact issue on any elements of its extracontractual claims.

But MCC did not argue, in either its motion or reply, that it was seeking a no-evidence summary judgment under rule 166a(i). *See* TEX. R. CIV. P. 166a(i) (No-Evidence Motion). Instead, MCC expressly sought judgment under rule 166a(c) and presented summary judgment evidence in support of its motion. *Cf.* TEX. R. CIV. P. 166a(i) (a party "without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which the adverse party would have the burden of proof at trial"; motion "must state the elements as to which there is no evidence").

In *Wyly*, in contrast, the defendant's motion "purport[ed] to be both a traditional and no-evidence motion," but the defendant failed to specify any no-evidence grounds. *Wyly*, 502 S.W.3d at 907. Instead, the defendant attempted to meet rule 166a(i)'s requirements in its reply, filed on the hearing date. *Id.* The trial court granted summary judgment, but the court of appeals reversed, explaining that although the movant could file a reply as late as the hearing date, it could not use the reply to amend the motion or to raise new and independent grounds. *Id.*

Here, although MCC's reply included argument that Orange Cup failed to raise a fact issue "on each element of each claim," its initial motion expressly stated

–12–

that MCC sought a traditional summary judgment on specifically-enumerated extracontractual claims. The grounds—that Orange Cup could not recover on its extracontractual claims without a breach of the policy, the right to recover further policy benefits, an independent injury, or a determination that MCC wrongfully rejected the claims—were stated in the initial motion, not asserted for the first time in the reply. *Cf. id.* We decide Orange Cup's third issue against it.

### 3.      Orange Cup's extracontractual claims

In its first issue, Orange Cup argues its extracontractual claims are viable even in the absence of any breach of the insurance contract. Relying on our ruling in *Orange Cup I* reversing the trial court's judgment on those claims, Orange Cup argues we should "sustain Orange Cup's appeal on this ground" alone. Our ruling, however, arose from MCC's failure to move for summary judgment on Orange Cup's extracontractual claims, not on consideration of the merits of those claims. *See Orange Cup I*, 2020 WL 5087763, at *8–9. Consequently, we decide Orange Cup's first issue against it.

In its fourth issue, Orange Cup contends the trial court erred by dismissing its extra-contractual claims for violations of the Insurance Code and the Prompt Payment Act, deceptive trade practices, bad faith, and fraud. Orange Cup argues (1) it "was made to believe that it has coverage for third party liability," (2) MCC "took advantage of Orange Cup's lack of expertise and knowledge to misrepresent to Orange Cup that it has coverage for liability from a third party claim," (3) MCC

–13–

refused to approve the contractor to conduct the cleanup of the environmental leakages on Orange Cup's premises and refused to approve any expenses above Orange Cup's deductible, in violation of the parties' Rule 11 agreement, and (4) MCC refused Orange Cup's request to appoint its own contractor to conduct the cleanup if it disapproved of Orange Cup's choice. Orange Cup concludes the trial court erred by granting summary judgment when there was "evidence before the District Court raising triable issues."

MCC moved for summary judgment on all of Orange Cup's extra-contractual claims, relying on this Court's conclusion in *Orange Cup I* that MCC established its right to judgment as a matter of law on Orange Cup's claims for breach of the insurance policy. *See Orange Cup I*, 2020 WL 5087763, at *8. MCC argued that Orange Cup could not recover on its extra-contractual claims as a matter of law "because Orange Cup has no right to recover further policy benefits, no injury independent of the claim for policy benefits, and no determination that MCC wrongfully rejected its claims." MCC relied on *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479 (Tex. 2018), in support of its motion.

Under *Menchaca*, "[a]n insured's claim for breach of an insurance contract is 'distinct 'and 'independent' from claims that the insurer violated its extra-contractual common-law and statutory duties." *Id.* at 489. A common law or statutory bad faith claim sounds in tort and gives rise to a cause of action separate from any cause of action for breach of the underlying insurance contract. *Id*. We

–14–

consider Orange Cup's extra-contractual claims under *Menchaca's* analytical framework.

**Insurance Code, DTPA, and bad faith**

The court in *Menchaca* "recognized two paths an insured may take to establish the damages caused by an insurer's violation of the Insurance Code."[4] *In re State Farm Mut. Ins. Co.*, 629 S.W.3d 866, 872 (Tex. 2021). The insured must establish either "(1) 'a right to receive benefits under the policy' or (2) 'an injury independent of a right to receive benefits.'" *Id.* at 873 (quoting *Menchaca*, 545 S.W.3d at 500). Under the first path, if an insured "establishes a right to receive benefits under the insurance policy [he] can recover those benefits as actual damages under the Insurance Code if the insurer's statutory violation causes the loss of benefits." *Id.* (internal quotation omitted). Under the second path, "'if an insurer's statutory violation causes an injury independent of the insured's right to recover policy benefits, the insured may recover damages for that injury even if the policy does not entitle the insured to receive benefits.'" *Id.* (quoting *Menchaca*, 545 S.W.3d at 499). Because these are the only paths to establishing damages, "'[a]n insured cannot recover *any* damages based on an insurer's statutory violation if the insured had no

---

[4] The *Menchaca* opinion also includes claims for bad-faith conduct and unfair or deceptive practices in its discussion of the five rules "that govern the relationship between contractual and extra-contractual claims in the insurance context." *Menchaca*, 545 S.W.3d at 489.

right to receive benefits under the policy and sustained no injury independent of a right to benefits.'" *Id.* (quoting *Menchaca*, 545 S.W.3d at 489).

As to the first path, there is no dispute that Orange Cup had a right to receive at least some benefits under the policy. *See Orange Cup I*, 2020 WL 5087763, at *6 ("MCC does not dispute that it is required by the policy to pay cleanup costs for environmental damage under Coverage B"), and *4 n.6 ("there is no dispute that MCC has paid Orange Cup the $75,000 policy limits under Coverage C to replace the tanks and lines"). Consequently, the issue is whether Orange Cup has received all the policy benefits to which it was entitled. *See Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 134–35 (Tex. 2019) (discussing *Menchaca* and concluding that even if the insured had a "right to benefits," the only damages sought were for policy benefits, "and those benefits have already been paid"). If no unpaid benefits remain, then to raise a fact issue on its extra-contractual claims, Orange Cup was required to offer summary judgment evidence of an injury that is independent from the loss of benefits. *Menchaca*, 545 S.W.3d at 500 ("The second aspect of the independent-injury rule is that an insurer's statutory violation does not permit the insured to recover *any* damages beyond policy benefits unless the violation causes an injury that is independent from the loss of the benefits.").

On remand, if Orange Cup offered evidence raising a fact issue that it lost benefits under Coverage A or B as a result of MCC's statutory violation or bad faith, then summary judgment would not have been proper on those claims. *See Ortiz*, 589

–16–

S.W.3d at 134. But as to Coverage A, Orange Cup offered only Shanta's affidavit testimony of her belief that Coverage A would cover claims made by Pulak as Orange Cup's landlord. Even if admissible, that testimony did not provide any facts supporting a contention that her belief was based on any false representation or other statutory violation by MCC. And as to Coverage B, the only summary judgment evidence was MCC's, offered again after remand, regarding Orange Cup's failure to comply with MCC's numerous requests for documentation showing that Orange Cup was "legally obligated to pay" for a "confirmed release" under the policy. *See Orange Cup I*, 2020 WL 5087763, at *2. Thus, Orange Cup failed to raise a fact issue as to lost benefits.

Absent a loss of policy benefits, Orange Cup could avoid summary judgment by raising a fact issue that it suffered an independent injury as a result of MCC's statutory violation or bad faith. *See Menchaca*, 545 S.W.3d at 500. The court in *Menchaca* explained, however, that "a successful independent-injury claim would be rare, and we in fact have yet to encounter one." *Id.* Orange Cup pleaded for damages "which include, without limitation, the cost to properly cleanup and repair Plaintiff's business premises and any investigative and engineering fees incurred in the claim," "consequential damages from Defendant's breach of contract," and related additional and exemplary damages, all arising from its alleged loss of benefits under the policy, not from an independent injury. Because Orange Cup failed to raise genuine issues of material fact that it lost policy benefits or suffered

–17–

an independent injury as a result of MCC's statutory violation or bad faith, the trial court did not err by granting summary judgment for MCC on these claims.

**Prompt Payment Act**

Orange Cup also pleaded claims under the Texas Prompt Payment of Claims Act, Chapter 542 of the Texas Insurance Code. TEX. INS. CODE §§ 542.051–.061 (TPPCA). The supreme court addressed the TPPCA's purpose and application in *Barbara Technologies Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 812 (Tex. 2019). The TPPCA "imposes procedural requirements and deadlines on insurance companies to promote the prompt payment of insurance claims." *Id.* at 812. "Though the TPPCA's purpose relates specifically to prompt *payment* of claims, the TPPCA also contains specific requirements and deadlines for responding to, investigating, and evaluating insurance claims." *Id.* (citing TPPCA §§ 542.055–.056). "Both the payment deadlines and the non-payment deadlines and requirements are enforceable under the TPPCA, and damages can be imposed for any violation." *Id.* (citing TPPCA §§ 542.058, .060). "To prevail under a claim for TPPCA damages under section 542.060, the insured must establish: (1) the insurer's liability under the insurance policy, and (2) that the insurer has failed to comply with one or more sections of the TPPCA in processing or paying the claim." *Id.* at 813; *see also* TPPCA § 542.060 ("Liability for Violation of Subchapter").

In its operative petition, Orange Cup alleged that MCC violated three sections of the Prompt Payment Act: (1) § 542.055, by failing to timely acknowledge the

claim, begin an investigation of the claim, and request all information necessary to investigate the claim within the statutory deadline, (2) § 542.056, by failing to accept or deny Orange Cup's "full and entire claim" within the statutory deadline to receive all necessary information, and (3) § 542.058, by failing to pay Orange Cup's claim without delay, because MCC "has delayed full payment of Plaintiff['s] claim longer than allowed and, to date, Plaintiff has not yet received full payment for [its] claim."

Citing *Barbara Technologies*, MCC sought summary judgment on Orange Cup's TCCPA's claims, arguing that (1) under *Orange Cup I*, it is not liable for any further benefits under the policy, and (2) it has timely responded to all demands from Orange Cup and has not missed any statutory deadlines. MCC's summary judgment evidence included an affidavit from its Assistant Vice President with attached correspondence between MCC and Orange Cup about Orange Cup's claims. Orange Cup did not specifically address its TCCPA claims in its summary judgment response and did not offer any evidence that MCC did not meet the TCCPA's deadlines in responding to, investigating, and evaluating its claims. Instead, Orange Cup's complaint was that MCC's TCCPA violation arose from its failure to pay under Coverages A and B at all. Given our conclusion in *Orange Cup I* that MCC did not breach its obligations under Coverages A and B and the lack of any evidence to raise a fact issue that MCC did not meet the TCCPA's deadlines in responding to Orange Cup's claims, we conclude that MCC established its right to judgment as a matter of law on Orange Cup's TCCPA cause of action.

**Fraud**

Orange Cup pleaded that MCC made misrepresentations of material fact on which Orange Cup relied to its detriment. Specifically, Orange Cup pleaded, "Defendant misrepresented to Plaintiff that the pollution to the Property was not covered under the Policy, even though the pollution was caused by a covered occurrence." In its motion for summary judgment, MCC argued that under *Orange Cup I*, "the pollution to the property was, in fact, *not covered* under Coverage A" and "MCC owed no coverage under Coverage B because Orange Cup failed to comply with the policy and the rule 11 agreement and failed to honor the deductible." MCC argued that as a result, "MCC did not misrepresent anything about this coverage to Orange Cup."

In its summary judgment response, Orange Cup argued that "[a]t the time of entering into the contract for the coverage, the plaintiff was made to believe that it has coverage for third party liability." MCC objected to Shanta's affidavit testimony on this subject, and we have concluded that the trial court did not err by sustaining MCC's objections. *See Kerlin*, 274 S.W.3d at 668 (affiant's "belief" about facts is legally insufficient to raise fact issue on fraud claim). In the absence of evidence raising a genuine issue of material fact on Orange Cup's fraud claim, the trial court did not err by granting summary judgment. *See id.*; *see also In re First Merit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001) (orig. proceeding) (cause of action for fraud requires false material representation).

Because Orange Cup did not raise a genuine issue of material fact in response to MCC's motion, the trial court did not err by granting summary judgment. TEX. R. CIV. P. 166a(c) (trial court shall grant summary judgment if movant has shown there is no genuine issue of material fact and it is entitled to judgment as a matter of law). We decide Orange Cup's fourth issue against it.

## CONCLUSION

The trial court's judgment is affirmed.

/Barbara E. Rosenberg/
BARBARA ROSENBERG
JUSTICE, ASSIGNED

210448f.p05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ORANGE CUP DRIVE IN LLC,
Appellant

No. 05-21-00448-CV     V.

MID-CONTINENT CASUALTY
COMPANY, Appellee

On Appeal from the 86th Judicial
District Court, Kaufman County,
Texas
Trial Court Cause No. 95975-86.
Opinion delivered by Justice
Rosenberg. Justices Nowell and
Smith participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Mid-Continent Casualty Company recover its costs of this appeal from appellant Orange Cup Drive In LLC.

Judgment entered this 5th day of January, 2023.