**Affirmed and Memorandum Opinion filed March 31, 2020.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-18-00172-CV
_____

### DR. JOEL JOSELEVITZ, Appellant

### V.

### CAROL ROANE, INDIVIDUALLY, AND COX MEDIA GROUP, LLC, Appellees

**On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2014-66926**

## M E M O R A N D U M   O P I N I O N

Appellant Dr. Joel Joselevitz appeals a summary judgment in appellee Carol Roane's favor on his breach of contract and defamation claims. He also appeals an order granting attorney's fees, costs, and nominal sanctions to appellee Cox Media

Group LLC under the Texas Citizens Participation Act ("TCPA") following remand from this court.[1]

Regarding his breach of contract claim, Joselevitz contends the summary judgment is error for two reasons: (1) the judgment states that the court granted summary judgment on traditional and no-evidence grounds, but Roane sought summary judgment only on no-evidence grounds; and (2) in response to Roane's no-evidence motion, he provided more than a scintilla of evidence of breach and damages, the only elements Roane challenged in the motion. Joselevitz argues alternatively that summary judgment on his contract claim was error because the contract language at issue is ambiguous.

Regarding his defamation claim, Joselevitz argues a genuine and material fact issue exists whether Roane's challenged statements were defamatory or true.

Joselevitz challenges the fees, costs, and sanctions awarded to Cox Media under the TCPA as an abuse of discretion because the awards are unreasonable and excessive.

For the reasons discussed below, we conclude that the trial court did not err in granting summary judgment on Joselevitz's breach of contract and defamation claims. We also conclude that the trial court did not abuse its discretion in awarding Cox Media attorney's fees, costs, and sanctions. We overrule Joselevitz's issues and affirm the trial court's judgment.

## Background

Roane filed a wrongful death lawsuit against Joselevitz and alleged that Roane's daughter, Nicole Willens, died of a drug overdose while under Joselevitz's

---

[1] *See Cox Media Grp., LLC v. Joselevitz*, 524 S.W.3d 850, 865 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

2

care. *See Cox Media Grp.*, 524 S.W.3d at 854. Joselevitz and Roane settled the lawsuit in May 2014 by executing a "Full and Final Release, Indemnity and Settlement Agreement" (the "Settlement Agreement"). The Settlement Agreement included a confidentiality provision. In the present suit, Joselevitz alleges that Roane violated the confidentiality provision. Because that contract language is important to this appeal, we quote the relevant portions:

CONFIDENTIALITY

In further consideration of the payment(s) expressed above, the parties agree that the terms and conditions of this agreement must be kept entirely confidential by all parties, and are not to be communicated to any other person or entity, except as provided herein. This agreement of confidentiality extends to: (1) the fact that this settlement agreement has been made; (2) the amount of consideration paid or to be paid under the terms of this agreement; (3) the existence, details, or terms of this agreement; and (4) the identity of any of the Parties Released in this agreement, whether identified by name, geographic region, religious affiliation, or by a general characterization.

It is further agreed that no summaries, documents, statements, acknowledgements or interviews will be given to any person, entity, news organization, magazine, legal report, newspaper, radio or television organization, or other representative of the media, in which any of the terms of this settlement agreement are disclosed. No copy of this [Settlement Agreement] will be given to any person, organization, or entity of any type. [Roane] and [Roane's counsel] agree that they will use their best efforts to prevent any publicity or disclosure, including inadvertent disclosure, of the terms of this settlement agreement or any of the information identified in this section.

It is further agreed that this confidentiality applies not only to [Roane] and [Roane's counsel], but also to all their employees, expert witnesses, investigators, and all other persons who are or who have been in any way associated with the investigation and prosecution of any claim relating to the injuries alleged in this case.

It is understood that [Roane] may disclose to necessary health care providers the medical history surrounding Nicole Willens' injury and

3

other medical facts concerning the medical care rendered to Nicole Willens so long as any such disclosure is made only for the purpose of, and to the extent necessary for, providing a needed medical history to obtain required health care services. As a further exception, [Roane] may disclose to [her] financial and tax advisors such information as is necessary for financial planning and tax advice and planning.

Prior to disclosing any confidential information under this Agreement, the party to whom the information is being disclosed must be informed that the information is confidential and subject to a confidentiality agreement.[2]

Shortly after signing the Settlement Agreement, Roane posted statements on her Twitter feed regarding Joselevitz's alleged responsibility for several of his patients' deaths.[3] Roane spoke with a journalist who wrote an article in the *Austin American-Statesman* newspaper critical of Joselevitz's treatment. The article stated that several of Joselevitz's patients, including Willens, died from overdoses. The article contained several quotes attributed to Roane. After the article's publication, Roane shared it on a Houston Texans' social media page, asking people to "share this on your facebook and twitter this article is about the doctor that the Medical Board blames for [Willens]'s death."

Joselevitz sued Roane for defamation and breach of the Settlement Agreement. In the same suit, Joselevitz sued Cox Media, which is the *Austin American-Statesman*'s ultimate parent company, for defamation and injunctive

---

[2] The quoted text is the relevant contract language presented to the trial court as evidence. On appeal, Joselevitz attaches to his brief a different, less redacted version of the Settlement Agreement and directs our attention to provisions not revealed to the trial court. We constrain our review to the summary judgment evidence properly before the trial court. *See, e.g.*, *Bencon Mgmt. & Gen. Contracting, Inc. v. Boyer, Inc.*, 178 S.W.3d 198, 210 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

[3] The patients' deaths were the subject of a Texas Medical Board investigation of Joselevitz, which resulted in a 2014 order curtailing Joselevitz's prescribing privileges and permanently prohibiting him from treating patients for chronic pain. *Cox Media Grp.*, 524 S.W.3d at 854.

relief. Cox Media filed a TCPA motion to dismiss the claims against it, which was overruled by operation of law. On Cox Media's appeal from that order, this court concluded that the motion to dismiss should have been granted and remanded to the trial court for determination of attorney's fees, costs, and sanctions. *See id.* at 853, 865. Cox Media then filed a motion for attorney's fees, costs, and sanctions in the trial court. Cox Media attached an affidavit from its attorney accompanied by billing records, setting forth reasonable and necessary fees of $47,744.69. Cox Media also sought $5,461.31 in costs and $45,347.70 in sanctions. Joselevitz responded, asserting that sanctions were not warranted, or alternatively, that a nominal sanction of $1.00 was sufficient; the attorney's fees Cox Media sought were unreasonable and unnecessary; and Cox Media's request for costs was excessive. After a telephonic hearing, the trial court awarded Cox Media $47,744.69 in attorney's fees, $4,983.11 in costs, and $2.00 in sanctions.

Meanwhile, Roane filed a document entitled "Motion for Traditional and No Evidence Summary Judgment." In her motion, Roane sought summary judgment on the contract claim because she did not breach the confidentiality provision and because Joselevitz had no evidence of breach or damages. Roane relied on and attached certain evidence to the motion, including a copy of the Settlement Agreement's confidentiality provision, excerpts from Joselevtiz's deposition, and Joselevitz's interrogatory and request for admission responses. Roane also sought summary judgment on the defamation claim because the challenged statements were neither defamatory nor false and because Joselevitz had suffered no damages resulting from any actionable statements.

Joselevitz filed a response. Regarding the contract claim, he argued that Roane breached the Settlement Agreement's confidentiality provision by: (1) posting the *Austin American-Statesman* article on Houston Texans' social media;

5

(2) mentioning Joselevitz in her Twitter feed; and (3) "facilitating" the publication of the article, speaking with the article's author, and providing quotes for the article. Citing an attached unsworn declaration, Joselevitz also claimed that Roane's alleged breaches caused damages. As to his defamation claim, Joselevitz asserted that Roane's statement in the newspaper article that he "slowly killed [Willens] with his prescription pad" was per se defamatory and false. The response does not otherwise respond to Roane's motion on the defamation claim, argue that Roane's statement in the article proximately caused recoverable damages, or attach evidence of defamation damages.

The trial court granted Roane's summary judgment motion without specifying whether it was granted on traditional or no-evidence grounds and signed a final judgment. Joselevitz timely appealed.

## Analysis

Joselevitz's first three issues challenge the summary judgment in Roane's favor. In his first issue, he contends that to the extent the trial court granted traditional summary judgment, it erred because Roane raised only no-evidence grounds in her summary judgment motion. In issue two, Joselevitz asserts that he presented more than a scintilla of evidence to support the breach and damage elements of his breach of contract claim, thus defeating Roane's no-evidence motion. In his third issue, Joselevitz claims that the trial court erred in granting Roane's summary judgment motion on his defamation claim because he presented more than a scintilla of evidence as to each element of this claim including that Roane made defamatory statements, which Roane failed to prove were true.

6

## A.      Summary Judgment Standard of Review

We review a grant of summary judgment under a de novo standard of review. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).  "[W]e apply the familiar standard of review appropriate for each type of summary judgment, taking as true all evidence favorable to the nonmovant, and indulging every reasonable inference and resolving any doubts in the nonmovant's favor."  *Dias v. Goodman Mfg. Co., L.P.*, 214 S.W.3d 672, 675-76 (Tex. App.— Houston [14th Dist.] 2007, pet. denied).  Where, as here, a trial court's order granting summary judgment does not specify the ground relied on for its ruling, we must affirm if any of the summary judgment grounds advanced is meritorious.  *Dealer Computer Servs., Inc. v. DCT Hollister Rd, LLC*, 574 S.W.3d 610, 615 (Tex. App.— Houston [14th Dist.] 2016, no pet.).  Additionally, we must affirm if the appellant fails to challenge all grounds on which summary judgment may have been granted. *Id.* (citing *Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970)); *see McCrary v. Hightower*, 513 S.W.3d 1, 5 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

To prevail on a traditional motion for summary judgment, a movant must establish that no genuine issue of material fact exists so that the movant is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c); *Mann Frankfort*, 289 S.W.3d at 848.  As is relevant here, a defendant who conclusively negates at least one of the essential elements of a cause of action is entitled to summary judgment. *Murphy Expl. & Prod. Co.-USA v. Adams*, 560 S.W.3d 105, 108 (Tex. 2018); *Wyly v. Integrity Ins. Sols.*, 502 S.W.3d 901, 905 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

In reviewing a no-evidence summary judgment, we ascertain whether the nonmovant pointed out summary judgment evidence raising a genuine issue of fact

as to the essential elements attacked in the no-evidence motion. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206-08 (Tex. 2002). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam).

No-evidence and traditional grounds for summary judgment may be combined in a single motion. *Binur v. Jacobo*, 135 S.W.3d 646, 650-51 (Tex. 2004). The substance of the motion and not its form or the attachment of evidence determines whether the motion is a no-evidence, traditional, or combined motion. *Id.* When a party files both a no-evidence and a traditional motion for summary judgment, generally we consider the no-evidence motion first. *See First United Pentecostal Church of Beaumont, d/b/a the Anchor of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017) (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)).

**B.      Breach of Contract Claim**

In his first issue, Joselevitz contends that, substantively, Roane's motion presented only no-evidence grounds and the trial court therefore erred to the extent it granted a traditional summary judgment in Roane's favor on the breach of contract claim.

The judgment does not specify whether the trial court granted summary judgment on traditional or no-evidence grounds. On appeal, Joselevitz argues that Roane is not entitled to summary judgment on no-evidence grounds. If the motion was only a no-evidence motion, then we of course apply a no-evidence review. If the motion was combined, we review the no-evidence arguments first in any event. *See Parker*, 514 S.W.3d at 219. Thus, we proceed to consider whether the summary judgment is proper under the no-evidence grounds raised in the motion, and because we conclude it is, Joselevitz's first issue is inconsequential to our review.

8

To recover on a breach of contract claim, a claimant must prove: (1) the existence of a valid contract; (2) the claimant performed or tendered performance; (3) the other party breached the contract; and (4) the claimant was damaged as a result of the breach. *Sec. Nat'l Ins. Co. v. Waloon Inv., Inc*., 384 S.W.3d 901, 907 n.2 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see also Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). In the no-evidence portion of her motion, Roane argued that Joselevitz had no evidence that (1) she breached the Settlement Agreement and (2) any damages resulted from her alleged breach. *See* Tex. R. Civ. P. 166a(i) (no-evidence motion must specifically state the elements as to which the movant contends there is no evidence); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009).

In his second issue, Joselevitz contends that he presented evidence raising a genuine and material fact issue to support the breach element of his contract claim. According to Joselevitz, Roane breached the Settlement Agreement's confidentiality provision by: (1) sharing the *Austin American-Statesman* article through her Facebook account to a Houston Texans' social media page; (2) identifying Joselevitz to the newspaper as "the doctor that the Medical Board blames for [Willens]'s death"; (3) failing to use her "'best efforts to prevent publicity or disclosure . . .' of the information and circumstances concerning Dr. Joselevitz's care for Nicole Willens"; (4) identifying Joselevitz in various messages she posted on her Twitter account, such as that Joselevitz's "practice of medicine poses a threat to the public. 3 dead & 17 non-therapeutic prescribing" and that the Texas Medical Board restricted Joselevitz from writing certain types of prescriptions; and (5) giving statements and interviews to the author of the *Austin American-Statesman* article. He urges that Roane disclosed the existence of the Settlement Agreement and Joselevitz's identity.

9

Roane says the statements Joselevitz identifies do not constitute a breach of the confidentiality provision because they do not show that she disclosed the agreement's existence or its terms, which is all the confidentiality provision precludes. Joselevitz, on the other hand, interprets the text as broadly requiring Roane to keep Joselevitz's identity confidential and not discuss Joselevitz at all. He contends alternatively that the language is ambiguous because it is subject to more than one reasonable interpretation.

To determine whether Joselevitz presented a scintilla of evidence that Roane breached the Settlement Agreement's confidentiality provision, this court necessarily must construe the relevant contract language. We construe a settlement agreement as we would any other contract. *E.g.*, *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 763-64 (Tex. 2018). The interpretation of an unambiguous contract is a legal question we review de novo. *See id.* at 763. "When a contract's meaning is disputed, our primary objective is to ascertain and give effect to the parties' intent as expressed in the instrument." *Id.* at 763. We presume parties intend what the agreement's words say. *Id.* We "interpret contract language according to its 'plain, ordinary, and generally accepted meaning' unless the instrument directs otherwise." *Id.* at 764 (quoting *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)).

Whether a contract is ambiguous is also a question of law we review de novo. *See id.* at 763. A contract is not ambiguous simply because the parties disagree about its meaning. *Id.* A contract is ambiguous when its meaning is uncertain and doubtful, or when it is reasonably susceptible to more than one interpretation. *See id.* at 765. In other words, if a written contract is worded so that it can be given a definite or certain legal meaning, it is not ambiguous. *See id.* "Parties cannot rely on extrinsic evidence to give the contract a meaning different from that which its

10

language imports, add to, alter, or contradict the terms contained within the agreement itself, make the language say what it unambiguously does not say, or show that the parties probably meant, or could have meant, something other than what their agreement stated." *Id.* at 769 (internal quotations and citations omitted).

We conclude that the confidentiality provision's plain language can be given a certain or definite meaning, and therefore it is not ambiguous and we construe it as a matter of law. *See, e.g.*, *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 806, 806 (Tex. 2012). The confidentiality provision prohibited Roane from disclosing that (1) she and Joselevitz had settled her wrongful death suit, (2) the amount of consideration paid under the terms of the Settlement Agreement, (3) the existence, details, or terms of the agreement, and (4) Joselevitz's identity as a party released by the Settlement Agreement. Additionally, the parties were not to provide to any person or entity, including the media, any summaries, documents, statements, acknowledgments, or interviews "in which any of the terms of this settlement agreement are disclosed." None of the evidence Joselevitz identifies, assuming its truth and accuracy, establishes that Roane disclosed any of the confidential information contemplated by the Settlement Agreement's language.

Joselevitz's interpretation of the confidentiality provision is unreasonable and contrary to the agreement's plain words. He suggests, for example, that provision (4), excerpted above, prohibits Roane from mentioning his name or discussing his treatment of Roane's daughter under any circumstances.[4] On its face, the

---

[4] Roane's allegations against Joselevitz were already matters of public record through the filing of her wrongful death lawsuit. Had Joselevitz desired to prevent Roane from speaking further about his treatment of Willens, he could have negotiated that as a term of the Settlement Agreement. *Cf. Leibovitz v. Sequoia Real Estate Holdings, L.P.*, 465 S.W.3d 331, 348 (Tex. App.—Dallas 2015, no pet.) (excerpting confidentiality and non-disparagement provision of settlement agreement, in which parties agreed not to make any disparaging statements about other parties). Nothing in our record indicates he did so.

11

confidentiality provision is not so broad. It does not prohibit Roane from discussing Joselevitz generally, his treatment of her daughter, Roane's allegations against him, or the Texas Medical Board investigation. Construing the provision as expansively as Joselevitz advocates would require us to read out the portions limiting the provision's scope to disclosure of the agreement, its terms, and Joselevitz's identity as a party released by the agreement. *See URI, Inc.*, 543 S.W.3d at 764 (explaining that words must be construed in the context in which they are used); *Frost Nat'l Bank v. L&F Distrib., Ltd.*, 165 S.W.3d 310, 312-13 (Tex. 2005) (per curiam) (considering sentences of provision together and in light of entire agreement; court of appeals erred in "ignor[ing] pertinent language").

Joselevitz's argument in support of his second issue relies on his impermissibly broad reading of the confidentiality provision. We reject his interpretation. Construing the agreement by its plain words, Joselevitz failed, in response to Roane's no-evidence portion of the summary judgment motion, to present any evidence that Roane breached the Settlement Agreement. Therefore, the trial court did not err in granting summary judgment on Joselevitz's breach of contract claim.

We overrule Joselevitz's second issue.

## C.    Defamation Claim

In his third issue, Joselevitz challenges the summary judgment dismissing his defamation claim against Roane. Roane asserted in the no-evidence portion of her motion that Joselevitz had no evidence of damages resulting from the alleged defamatory statements. *See, e.g.*, *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015) (orig. proceeding) (explaining that damage is an element of a defamation claim, "unless the defamatory statements are defamatory per se").

Joselevitz's appellate brief does not address the damages element on which Roane moved for no-evidence summary judgment. He has not directed us to where in the summary judgment record he presented the trial court with evidence that he suffered damages as a result of the alleged defamatory statements attributed to Roane. Our review of the record indicates that Joselevitz did not offer evidence of defamation damages in response to Roane's motion. In fact, insofar as defamation damages are concerned, Joselevitz's summary judgment response makes but one oblique statement regarding the issue. He argued that a quote from the newspaper article that Joselevitz "slowly killed [Willens]" with his "prescription pad" was defamatory per se. "Defamation per se refers to statements that are so obviously harmful that general damages may be presumed." *In re Lipsky*, 460 S.W.3d at 593. Liberally construing Joselevitz's summary judgment response as contending that he need not present evidence of damages because the single statement he identified was defamatory per se, this argument cannot serve as a basis to reverse the judgment because he does not advance the contention in his brief on appeal and has therefore abandoned it. *See, e.g.*, *1993 GF P'ship v. Simmons & Co. Int'l*, No. 14-09-00268-CV, 2010 WL 4514277, at *6 (Tex. App.—Houston [14th Dist.] Nov. 9, 2010, no pet.) (mem. op.) (explaining that to preserve a ground for appellate review, a party must raise the ground in the trial court and present it on appeal).

Accordingly, the trial court did not err in granting summary judgment in Roane's favor on Joselevitz's defamation claim.

We overrule Joselevitz's third issue.

### D. Cox Media's Fees, Costs, and Sanctions

In his fourth issue, Joselevitz contends the trial court erred in granting Cox Media's motion for attorney's fees, costs, and sanctions. Specifically, he asserts that

13

Cox Media requested unreasonable fees, that sanctions are not appropriate, and that "other costs" should not have been awarded.

"A 'reasonable' attorney's fee 'is one that is not excessive or extreme, but rather moderate or fair.'" *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016) (quoting *Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010)). The determination of a reasonable fee rests within the trial court's discretion. *Id.* Thus, we review the trial court's order on attorney's fees for an abuse of discretion. *See, e.g.*, *Avila v. Larrea*, 506 S.W.3d 490, 494 (Tex. App.—Dallas 2015, pet. denied).

Cox Media's motion for fees, costs, and sanctions included as support a detailed affidavit from counsel. This affidavit is supported by itemized fee statements and segregates fees on a task-by-task basis. Counsel testified that the fees incurred were reasonable, discussing the *Arthur Andersen* factors. *See Arthur Anderson & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). The fee statements showed that Cox Media incurred $79,126.32 in total attorney's fees; however, Cox Media sought only $47,744.69 in fees, which represented the amount directly associated with the TCPA relief.[5] Cox Media's counsel averred that a reasonable hourly fee would range from $420 to $460 per hour, but because of his lengthy relationship with Cox Media, he charged and was paid a discounted hourly rate of $335.75.

In the trial court, Joselevitz neither objected to the fee affidavit nor offered any controverting evidence. Instead, he argued there, as he does on appeal, that the fees sought were too high for "filing a single motion to dismiss," that fees for pre-suit activities could not be recovered, and that appellate fees were not available.

---

[5] Cox Media sought the remaining fees incurred as sanctions, but the trial court denied this request and awarded only $2.00 in nominal sanctions.

14

Under Chapter 27, a successful movant is entitled to recover attorney's fees, costs, and expenses incurred in defending against a "legal action" brought by the nonmovant. *See* Tex. Civ. Prac. & Rem. Code § 27.009(a)(1). "Legal action" is defined to include "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." *Id.* § 27.001(6). Thus, the statute makes clear that Cox Media is entitled to its legal fees in responding to Joselevitz's lawsuit against it, including those fees incurred pre-suit.

Moreover, courts have held that Chapter 27 authorizes attorney's fees for pre-suit investigation of claims, responding to discovery, and motions to quash subpoenas, as well as those fees incurred in drafting, filing, and pursuing a dismissal under Chapter 27. *See, e.g.*, *Shillinglaw v. Baylor Univ.*, No. 05-17-00498-CV, 2018 WL 3062451, at *5-6 (Tex. App.—Dallas June 21, 2018, pet. denied) (mem. op.) (upholding award of attorney's fees for, *inter alia*, investigating plaintiff's claims, answering plaintiff's petition, filing TCPA motion to dismiss, responding to plaintiff's discovery motions, attending hearings on motion to dismiss, filing motions for protection and to quash subpoenas, attending hearing on attorney's fees, preparing for and attending hearing on plaintiff's injunction request, and responding to motion to reconsider); *Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865, 879-80 (Tex. App.—Dallas 2014, no pet.) (upholding award of attorney's fees, including those incurred pre-suit to investigate a demand, to successful Chapter 27 movant), *disapproved of on other grounds by Hersh v. Tatum*, 526 S.W.3d 462, 466 n.22 (Tex. 2017). As to Joselevitz's complaint about the award of appellate attorney's fees, we conclude, as our sister court in Houston has, that appellate attorney's fees are mandatory under Chapter 27 when proof of reasonable fees is presented. *See Urquhart v. Calkins*, No. 01-17-00056-CV, 2018 WL 3352919, at

15

*5 (Tex. App.—Houston [1st Dist.] July 10, 2018, pet. filed) (mem. op.). Considering this authority, we cannot say the trial court abused its discretion in awarding Cox Media $47,744.69 in attorney's fees.

Joselevitz also contends that the award of $4,983.11 in costs is unreasonable and arbitrary. He complains that the trial court improperly awarded Cox Media $478.20 in travel costs associated with the hearing on fees and sanctions, but this hearing was held by telephone. However, the trial court reduced Cox Media's fee request—originally $5,461.31—by this amount, presumably because this hearing was held by telephone and these costs were not incurred. Joselevitz complains about other costs in a conclusory manner, such as urging that certain mileage and lodging expenses "should not have been granted" or that costs for electronic billing "should not have been awarded." He provides no meaningful analysis as to why these expenses were excessive, nor does he provide any authority showing that such costs are not recoverable in a Chapter 27 action. *See* Tex. R. App. P. 38.1(i). Thus, he has not shown that the trial court erred in awarding Cox Media $4,983.11 in costs.

Finally, Joselevitz attacks the $2.00 awarded to Cox Media as a sanction, devoting approximately three pages in his brief to his argument that sanctions were not appropriate to deter future similar conduct, as payment of the fees alone is a sufficient deterrent. Chapter 27 sanctions are mandatory, and the proper amount of the sanction is left to the trial court's discretion. *See, e.g.*, *Landry's Inc. v. Animal Legal Defense Fund*, 566 S.W.3d 41, 70 (Tex. App.—Houston [14th Dist.] 2018, pet. filed); *Cox Media Grp.*, 524 S.W.3d at 864; *see also* Tex. Civ. Prac. & Rem. Code § 27.009(a) (court "shall" award sanctions to successful moving party). The $2.00 sanction award is nominal. The trial court did not abuse its discretion in making this award.

We overrule Joselevitz's fourth and final issue.

16

**E.      Rule 45 Damages**

Both Roane and Cox Media request damages for a frivolous appeal.  If we determine that an appeal is frivolous, we may, on motion of any party or on our own initiative, award the prevailing party "just damages."  Tex. R. App. P. 45.  "To determine whether an appeal is frivolous, we review the record from the viewpoint of the advocate and decide whether the advocate had reasonable grounds to believe the case could be reversed."  *Glassman v. Goodfriend*, 347 S.W.3d 772, 782 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (en banc).  We need not sanction every frivolous appeal; rather, the imposition of sanctions is a discretionary decision exercised with prudence and caution only after careful deliberation.  *Id.*  Sanctions are not appropriate when, despite the failure to convince us on appeal, the appellant's argument has a reasonable basis in law and constitutes an informed, good-faith challenge to the trial court's judgment.  *Goss v. Houston Cmty. Newspapers*, 252 S.W.3d 652, 657 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

After reviewing the record here, in exercising our discretion we decline to award sanctions for a frivolous appeal.  We deny Roane's and Cox Media's request for damages under Rule 45.

### Conclusion

Having overruled Joselevitz's issues, we affirm the trial court's judgment.

/s/      Kevin Jewell
          Justice

Panel consists of Justices Wise, Jewell, and Poissant.

17